## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*: | : |
| | : Chapter 11 |
| **PILLOWTEX CORPORATION**, *et al.*, | : Jointly Administered |
| | : |
| Debtors. | : Case No. 03-12339 (PJW) |
| | : |
| | : |
| **JOHN WAHOSKI**, as Liquidating Trustee | : |
| of Pillowtex Corporation | : Adv. Proc. No. 05-30182 (KJC) |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| **CLASSIC PACKAGING COMPANY,** | : |
| | : |
| Defendant. | : |
| | : |

## MEMORANDUM[1]

### BY:   KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

### BACKGROUND

On July 30, 2003 (the "Petition Date"), Pillowtex Corporation and related entities (the "Debtors" or "Pillowtex") filed voluntary chapter 11 bankruptcy petitions. The Debtors and the Official Committee of Unsecured Creditors (the "Committee") filed a Joint Plan of Liquidation (the "Plan"), which was confirmed by Order dated February 13, 2007, and the Plan became effective on June 29, 2007.

During the pending chapter 11 case, the Committee filed a number of adversary

---

[1]The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F), (H) & (O).

1

proceedings seeking to avoid preferential and fraudulent transfers. The confirmed Plan established a Liquidating Trust and provided for the vesting of the right to continue the adversary proceedings in the Liquidating Trust upon the effective date of confirmation. The parties in the adversaries signed stipulations agreeing to substitute "John Wahoski, as Liquidating Trustee of Pillowtex Corporation" as plaintiff, in the place of the Committee.[2]

One of those adversaries, filed on November 18, 2005, was against Classic Packaging Company ("Classic"). Prior to the Petition Date, Classic produced plastic bags and packaging for the Debtors, printed with Pillowtex brand names on them. The complaint against Classic set forth three counts: (i) Count One seeks to avoid and recover "at least" $61,761.32 paid by the Debtors to Classic during the ninety (90) day period before the Petition Date (the "Transfers") as preferential transfers pursuant to Bankruptcy Code §§ 547 and 550, (ii) Count Two seeks to avoid and recover the Transfers as fraudulent transfers pursuant to Bankruptcy Code §§548 and 550, and (iii) Count Three seeks to disallow Classic's claims pursuant to Bankruptcy Code § 502(d) (the "Complaint"). *See* 11 U.S.C. §§ 547, 548 & 502(d). On December 27, 2005, Classic filed an answer to the Complaint asserting, among other things, the affirmative defense that the Transfers were made in the ordinary course of business pursuant to § 547(c)(2) of the Bankruptcy Code. *See* 11 U.S.C. § 547(c)(2)(2003).[3]

---

[2]The Committee and Wahoski, as Liquidating Trustee of Pillowtex Corporation, will be referred to interchangeably herein as the "Plaintiff."

[3] Section 547 was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA"). Although this adversary proceeding was filed after the October 17, 2005 effective date of the BAPCPA amendments, the main case was commenced prior to October 17, 2005. Therefore, the BAPCPA amendments are inapplicable. See BAPCPA, Pub. L. No. 109-8, § 1501(b)(1), 119 Stat. 23 (2005) ("[T]he amendments made by this Act shall not apply with respect to cases commenced under title 11, United States Code, before the effective date of this Act.").

Currently before the Court is Classic's motion, filed on July 10, 2006, seeking the following relief: (i) summary judgment on Count One and Count Three of the Complaint pursuant to Fed.R.Civ.P. 56, and (ii) dismissal of Count Two of the Complaint pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6)(D.I. 33)(the "Motion"). Classic argues that judgment should be entered in its favor on Count One because the Transfers were made in the ordinary course of business and cannot be avoided pursuant to Bankruptcy Code § 547(c)(2). In support of its Motion, Classic provided affidavits by Classic's vice president, Ken Pilla, and controller, Linda Turgeon, along with Classic's "Terms and Conditions" with the Debtors, the Debtors' payment history, work orders, production and shipment dates. Classic also argues that, because the relief in Count Three is dependent on avoidance of the Transfers under Count One, then summary judgment in its favor on Count Three must follow.

Further, Classic argues for dismissal of Count Two because the Plaintiff failed to satisfy the pleading requirement of Fed.R.Civ.P. 9(b), and failed to state a claim on which relief can be granted under Fed.R.Civ.P. 12(b)(6).

On July 20, 2006, the Plaintiff filed its opposition to Classic's Motion (D.I. 36), arguing that: (i) the Transfers were not made in the ordinary course of business established by the parties because the payment terms between Classic and the Debtors changed in April 2003, just one month before the preference period, as evidenced by the Vendor Request Form, an exhibit attached to the Plaintiff's opposition (the "Vendor Request Form"), and (ii) Classic has failed to provide evidence that the Transfers were made according to ordinary business terms.

On July 28, 2006, Classic filed a reply to the Plaintiff's opposition (D.I. 44) providing supplemental affidavits by Linda Turgeon and Ken Pilla, as well as an affidavit by Bill Balkcum,

3

the president of another company packaging company.

The parties subsequently filed a number of related motions, including the Plaintiff's motion to strike portions of Classic's reply, related to the supplemental affidavits (D.I. 48), Classic's motion to strike the Vendor Request Form (D.I. 49), and Classic's motion to have the Court consider the affidavit of Melanie Joyce, a former employee of the Debtors (D.I. 52). On April 11, 2008, the Court entered an Order (the "Procedures Order") addressing the outstanding motions, allowing the parties to conduct additional discovery, and allowing supplemental filings regarding the Motion. The Plaintiff then conducted depositions of Bill Balkcum, Ken Pilla, Linda Turgeon, and Melanie Joyce. The Plaintiff filed a supplemental statement in further opposition to Classic's Motion attaching copies of the four deposition transcripts (D.I. 101) (the "Supplemental Statement"). On July 30, 2008, the Court held oral argument on Classic's Motion.

For the reasons set forth below, the Court will deny Classic's motion for summary judgment on Counts One and Three of the Complaint, and grant Classic's motion to dismiss Count Two of the Complaint.

## UNDISPUTED FACTS

From approximately August 2001 until July 30, 2003, the Debtors, a large textile manufacturer, ordered various packaging bags from Classic, a manufacturer of plastic bags and packaging. During the preference period, which dates from May 1, 2003 until July 30, 2003 (the "Preference Period"), the Debtors made the following sixteen (16) payments to Classic:

| No. | Dates of Invoices | Check Date | Payment Date[4] | Amount |
|---|---|---|---|---|
| 1 | 04/15/2003 | 04/29/2003 | 05/01/2003 | $157.52 |
| 2 | 04/21/2003 | 05/01/2003 | 05/05/2003 | $91.30 |
| 3 | 04/17/2003 - 04/21/2003 | 05/01/2003 | 05/05/2003 | $497.63 |
| 4 | 04/24/2003 | 05/05/2003 | 05/07/2003 | $910.88 |
| 5 | 04/30/2003 | 05/12/2003 | 05/14/2003 | $558.46 |
| 6 | 04/24/2003 | 05/15/2003 | 05/20/2003 | $218.94 |
| 7 | 05/07/2003 | 05/19/2003 | 05/21/2003 | $5,211.86 |
| 8 | 05/02/2003 - 05/09/2003 | 05/20/2003 | 05/22/2003 | $3,270.32 |
| 9 | 05/13/2003 | 05/23/2003 | 05/29/2003 | $95.67 |
| 10 | 05/13/2003 | 05/27/2003 | 05/29/2003 | $552.26 |
| 11 | 05/14/2003 | 06/02/2003 | 06/09/2003 | $1,165.03 |
| 12 | 05/16/2003 | 06/03/2003 | 06/09/2003 | $286.26 |
| 13 | 05/21/2003 - 06/05/2003 | 06/11/2003 | 06/13/2003 | $37,383.13 |
| 14 | 06/03/2003 | 06/11/2003 | 06/13/2003 | $5,612.91 |
| 15 | 06/26/2003 | 07/01/2003 | 07/03/2003 | $2,557.65 |
| 16 | 06/06/2003 - 07/09/2003 | 07/09/2003 | 07/11/2003 | $7,824.58 |
| Total | | | | $66,394.40 |

---

[4]This date is the date on which the payment check was honored by the bank. In §547(b) preferential transfer cases involving payment by an ordinary check, the date of the "transfer," as defined in §101(54), is the date the check is honored by the drawee bank. *Barnhill v. Johnson,* 503 U.S. 393, 400 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992).

## DISCUSSION

A.    **Motion for Summary Judgment based on the Ordinary Course of Business Defense of § 547(c)(2)**

(1)    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056.  In a motion for summary judgment, the moving party "always bears the initial responsibility of informing the...court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the moving party has made a proper motion for summary judgment, the burden shifts to the non-moving party, pursuant to Rule 56(e)(2), which provides, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - - by affidavits or as otherwise provided in this rule - - set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment, if appropriate, shall be entered against that party." Fed R. Civ. P. 56(e)(2); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts

. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380, 127

S.Ct. 1769, 1776, 167 L.Ed. 2d 686 (2007) quoting *Matsushita*, 475 U.S. at 586-87.

"In determining whether a dispute regarding a material fact exists, [the Court will] draw

all reasonable inferences in favor of the non-moving party." *Fields v. Thompson Printing Co.*,

363 F.3d 259, 265 (3d Cir. 2004). The fact is material when it could "affect the outcome of the

suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 2d 202

(1986); *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995). At

the summary judgment stage, it is not the role of the judge to weigh the evidence or to evaluate

its credibility, but to determine "whether there exists a genuine issue for trial." *Anderson,* 477

U.S. at 249.

    (2)   <u>Discussion</u>

Classic argues that the ordinary course of business defense, set forth in Bankruptcy Code

§ 547(c)(2), insulates the Transfers from avoidance under § 547(b), by providing that the

Transfers may not be avoided if they were:

    (A)    in payment of a debt incurred by the debtor in the ordinary course of
              business or financial affairs of the debtor and the transferee;

    (B)    made in the ordinary course of business or financial affairs of the debtor
              and the transferee; and

    (C)    made according to ordinary business terms.

11 U.S.C. § 547(c)(2) (2003).[5]  The policies underlying the ordinary course of business defense

are two-fold: (1) to encourage creditors to continue dealing with distressed debtors on normal

---

[5] *See* n.3, *supra.*

business terms, and (2) to promote equality of distribution by ensuring that creditors are treated equitably. *See Fiber Lite Corp. v. Molded Acoustical Products, Inc., (In re Molded Acoustical Products, Inc.)*, 18 F.3d 217, 219 (3d Cir. 1994). The ordinary course of business defense "was intended to 'leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy.'" *Union Bank v. Wolas*, 502 U.S. 151, 160 , 112 S.Ct. 527, 116 L.Ed. 2d 514 (1991) (quoting H.R. Rep. No. 95-595, at 373 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6329).

In establishing the ordinary course of business defense, Classic must prove, by a preponderance of the evidence, that all three elements of § 547(c)(2) are satisfied. *J.P. Fyfe, Inc. v. Bradco Supply Corp.*, 891 F.2d 66, 69 (3d Cir. 1989). *See also HLI Creditor Trust v. Metal Tech. Woodstock Corp. (In re Hayes Lemmerz Int'l, Inc.)*, 339 B.R. 97, 104 (Bankr.D.Del. 2006) ("Prior to the amendment of the Bankruptcy Code, which became effective October 17, 2005, the provisions of §547(c)(2)(A), (B), and (C) were stated in the conjunctive, and thus each were required to be proven independently.") The Plaintiff argues that Classic has failed to establish that there are no material factual issues regarding (i) whether the Transfers were within the ordinary course of business or financial affairs between the Debtors and Classic, and (ii) whether the Transfers were made according to ordinary business terms, that is, according to standard industry practices.[6]

---

[6]The Plaintiff does not concede that the first element of §547(c)(2) is met, but he does not raise any argument with respect to that element.

(a)     Section 547(c)(2)(B) - payment made in the ordinary course of business or
        financial affairs of the debtor and the transferee.

The second element of § 547(c)(2) requires the Court to perform a "subjective test," to

determine the consistency of transactions between the parties before and during the preference

period. *SEC v. First Jersey Sec., Inc. (In re First Jersey Sec., Inc.)*, 180 F.3d 504, 512 (3d Cir.

1999) ("*J.P. Fyfe* teaches the determination of what is 'in the ordinary course of business' is

subjective, calling for the Court to consider whether the transfer was ordinary as between the

debtor and the creditor.") "Factors such as timing, the amount and manner in which a transaction

was paid are considered relevant." *Id.* Courts ordinarily consider the following criteria in

analyzing such consistency:

(1)     the length of time the parties have engaged in the type of dealing at issue;
(2)     whether the subject transfer was in an amount more than usually paid;
(3)     whether the payments were tendered in a manner different from previous
        payments;
(4)     whether there appears any unusual action by either the debtor or creditor to
        collect or pay on the debt; and
(5)     whether the creditor did anything to gain an advantage (such as gain
        additional security) in light of the debtor's deteriorating financial
        condition.

*Hayes Lemmerz*, 339 B.R. at 106 citing *Scharffenberger v. United Creditors Alliance Corp. (In*

*re Allegheny Health, Educ. & Research Found.*, 292 B.R. 68, 79 (Bankr. W.D. Pa 2003));

*Hechinger Liquidation Trust v. James Austin Co. (In re Hechinger Inv. Co.)*, 320 B.R. 541, 548

(Bankr. D. Del. 2004); *Logan Square East v. Peco Energy Co. (In re Logan Square East)*, 254

B.R. 850, 855 (Bankr. E.D. Pa. 2000).

In support of its motion for summary judgment, Classic provided an affidavit by its Vice

President, Ken Pilla, stating that Classic produced packaging bags for the Debtors for two years

9

before the Petition Date and that Classic's "standard payment terms to all its customers is net

thirty (30) days, one percent (1%) discount if payment [was] made within ten (10) days." (*See*

Ex. 4 to the Motion, Pilla Aff., ¶¶ 4, 6.)  According to the affidavit, the Debtors were "always

current" on making their payments to Classic. (*See id.* ¶ 12.)  Classic also provided an affidavit

by its Controller supporting the above statements by Ken Pilla (*see* Ex. 3 to the Motion, Turgeon

Aff. ¶¶ 2, 4, 8, 10) and stating that:

- Classic produced and shipped goods to Pillowtex under the Terms and Conditions during the entire business relationship and never varied or amended [its] Terms and Conditions (¶ 5).

- Classic had 952 transactions with Pillowtex [from the inception of the relationship in August 2001 until July 2003], and received payment within thirty three (34) [sic] days on average (¶ 6).

- The "latest" payment was 337 days after the invoice date, but those invoices dated from December 2001 and were paid in November 2002. The reason that these December 2001 invoices were late was because there was an administrative dispute over shipment and getting payment approval. A few other invoices were paid outside of the thirty (30) day range, and these invoices all involve an administrative issue such as the invoice not being forwarded to the proper Pillowtex plant or office or Pillowtex needing to confirm receipt with the plant (¶ 7).

- Pillowtex's payment pattern in the April to July 2003 period for the payments at issue was not significantly different [from the pattern] during the entire course of the relationship  (¶ 19).

(*Id.*)  Attached as Exhibit D to the Turgeon Affidavit is a "Pillowtex payment history,"

providing, among other information, the number of days between the Classic's invoice date and

the Debtors' payment date, beginning August 27, 2001 and continuing through July 25, 2003 (the

"Payment History").  Classic later provided an amended affidavit by its Controller stating that:

- The average number of days to pay excluding the last 90 says is 35 days. Out of a total of approximately 880 invoices (this excludes the invoices

issued in the last 90 days), the total percentage of invoices over 45 days
was 3.3% (¶ 4).

- 96.7% of Pillowtex invoices outside of preference period were paid within
  45 days (¶ 5).

- Pillowtex's payments [during the preference period] averaged 17 days, for
  which Pillowtex took the discount offered by Classic in the amount of
  $642.81 (¶ 9).

(Ex. B to Classic's Reply, Turgeon Reply Aff.)  Later, Classic provided an affidavit by Melanie

Joyce, a former employee of the Debtors, stating that:

- From the beginning of Classic's business relationship with Pillowtex,
  Classic's standard payment terms were net thirty (30) days, with a one
  percent (1%) discount if payment issued at ten (10) days.  These were the
  payment terms offered to Pillowtex during the entire business relationship
  and were not unusual in the industry (¶ 8).

- Classic never changed its terms and I never asked for a change in terms (¶
  10).

(*See* Notice of Filing Affidavit, D.I. 47, Joyce Aff.)  Based on the foregoing affidavits and other

documents, Classic argues that the Debtors always paid Classic in a timely manner, with a few

exceptions, and that the Transfers made during the preference period continued to be made in a

timely manner.  Classic argues that during the entirety of the parties' business relationship, the

Debtors' account was always considered "current," and Classic never took any action to

terminate or restrict the account.  Classic also argues that any change in the timing of the

payments during the Preference Period was done by the Debtors voluntarily to take advantage of

the 1% discount.  Classic argues that the payments made more quickly than before were not

outside the ordinary course of business, because the payments were made within the parties'

established terms.

11

In response, the Plaintiff contends that the payment history between the Debtors and Classic demonstrates that the timing of the payments changed drastically during the Preference Period because the Debtors started paying more quickly (with some payments being made as early as two days after invoice).[7]  The Plaintiff argues that it is irrelevant whether the Debtors *voluntarily* started paying more quickly - - the faster payments show that the Debtors were preferring this creditor.  Moreover, the Plaintiff disputes Classic's position that the parties' business relationship did not change, relying on the Vendor Request Form as evidence that the payment terms changed just prior to the Preference Period from *net thirty (30) days* to *net twenty (20) days,* with a 1% discount if payment issued within 10 days. (*See* Vendor Request Form.)[8] The Plaintiff also argues that the parties' original terms (as stated on the Terms and Conditions of Sale form signed by the Debtors and attached to the Motion) state only that the payments were due "net 30 days," with no mention of a discount.

I conclude that Classic has failed to prove that no genuine issues of material fact exist. The parties dispute whether the course of dealing between Classic and the Debtors (i.e., the payment terms) changed just before the Preference Period began and whether this caused the payments to be made more quickly during the preference period.[9]  On a motion for summary

---

[7]In the Supplemental Statement, the Plaintiff mentions deliveries from Classic to the Debtors during the preference period that were prepaid or required cash on delivery, but no evidence of these payments was provided in response to the Motion.

[8]Contrary to the statements in her affidavit that the parties' payment terms did not change, Melanie Joyce testified at her deposition that she recalled signing the Vendor Request Form, the one-page document that appears to change the payment terms between Classic and the Debtors from net 30 days to net 20 days, on or about April 3, 2003.  (Joyce Dep. 89:13-89:25.)

[9]Classic argues that the facts here are similar to those determined to fall within an ordinary course of business defense in *Montgomery Ward LLC v. OTC Int'l, Ltd. (In re Montgomery Ward, LLC),* 348 B.R. 662 (Bankr.D.Del. 2006). Classic argues that *Montgomery Ward* determined that a change in

12

judgment, the Court is precluded from weighing the evidence and evaluating its credibility. After

review and consideration of the materials presented in connection with the Motion, I cannot

conclude that the Transfers were made within the ordinary course of business between the

parties.

       (b)     <u>Section 547(c)(2)(C) - payments made according to ordinary business terms.</u>

      To prove that the business terms between the Debtors and Classic were ordinary in the

industry, Classic provided affidavits of its own employees (*see* Ex. A to Classic's Reply, Pilla

Reply Aff., and Turgeon Reply Aff.) and an affidavit of William Balkcum, vice president of

Atlantic Corporation, another company that sells packaging materials (Ex. C to Classic's Reply,

Balkcum Aff.).

      The Plaintiff argues that the affidavits offered by Classic fail to demonstrate that the

Transfers were made according to ordinary business terms because the affiants do not qualify as

experts, were not introduced as experts, and cannot attest to ordinary terms in the industry.

      Classic argues, correctly, that the Third Circuit Court of Appeals has determined that

"testimony from employees of the parties involved in a preference payment dispute may be used

to establish an industry standard as long as the court determines that the employees are credible

and have significant and relevant industry experience." *Troisio v. E.B. Eddy Forest Products (In*

---

payment terms pre-preference period will not defeat an ordinary course of business defense so long as the
change was not made pursuant to overly zealous collection efforts by a creditor. *See Montgomery Ward*,
348 B.R. at 679. However, *Montgomery Ward* was not decided on a summary judgment motion, but after
trial and detailed findings of fact by the Judge regarding the parties' business relationship. Here, the
parties' affidavits and deposition testimony conflict on certain issues, raising credibility questions that
cannot be resolved on a summary judgment motion. While *Montgomery Ward* ultimately may be useful
in deciding this matter, there are issues of fact before me that must be resolved prior to deciding whether
the legal conclusions of *Montgomery Ward* are applicable here.

*re Global Tissue LLC)*, 106 Fed. Appx. 99, 103 (3d Cir. 2004).

The Plaintiff, relying on the depositions of Pilla and Turgeon, argues that their experience in the packaging industry is limited to Classic and, therefore, is not sufficient to provide evidence of an industry standard. The Plaintiff also argues that Mr. Balkcum's experience in the packaging industry concentrated on sales, rather than collection or payment of account receivables, and, therefore, he is not qualified to testify about an industry standard.

Because there is a material dispute regarding the terms that existed between the Debtors and Classic prior to and during the Preference Period, and summary judgment will be denied on that ground, I need not decide now whether such terms were ordinary in the industry or who, specifically, is qualified to testify with respect to the industry standard.

For the foregoing reasons, Classic's Motion for summary judgment on Counts One and Three must be denied.

**B.    Motion to Dismiss the Fraudulent Transfer Claim under § 548**

(1)    Standard - Rule 12(b)(6) Dismissal

Fed.R.Civ.P. 12(b)(6), made applicable by Fed.R.Bankr.P. 7012(b), governs a motion to dismiss for failing to state a claim upon which relief can be granted. "The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Anti-Trust Litig.)*, 496 F.Supp. 2d 404, 407 (D.Del. 2007) citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

The Supreme Court has determined that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

14

formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v.*

*Twombly,* 550 U.S.544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). *See Fowler v.*

*UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) quoting *Ashcroft v. Iqbal,* - - U.S. - - , 129

S.Ct. 1937, 1948-49, 173 L.Ed.2d 868 (2009)("[I]t is clear that conclusory or 'bare-bones'

allegations will no longer survive a motion to dismiss; 'threadbare recitals of elements of a cause

of action, supported by mere conclusory statements do not suffice.' To prevent dismissal, all civil

complaints must now set out 'sufficient factual matter' to show that the claim is facially

plausible. This then 'allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged.'")

      (2)   <u>Standard - Rule 9(b) Dismissal</u>

      Rule 9(b) of the Federal Rules of Civil Procedure, made applicable by Rule 7009(b) of

the Federal Rules of Bankruptcy Procedure, provides the "[i]n alleging fraud or mistake, a party

must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b).

This rule applies to allegations of actual fraud. *Mervyn's LLC v. Lubert-Adler Group IV, LLC*

*(In re Mervyn's Holdings, LLC)*, 2010 WL 980274, *3 (Bankr.D.Del. March 17, 2010). As noted

by my colleague, Judge Gross, in *Mervyn's*, courts in this district have held that claims of

constructive fraud (i.e., fraudulent transfers) are evaluated using Rule 8(a)(2).[10] *Id.* at n.5 (citing

cases). Because the Complaint does not allege actual fraud, Rule 9(b) does not apply and I

review the sufficiency of Count Two under Rule 8(a)(2) and Rule 12(b)(6).

---

      [10]Fed.R.Civ.P. 8, made applicable hereto by Fed.R.Bankr.P. 7008, provides in pertinent part that "A pleading that states a claim for relief must contain. . . a short and plain statement of the claim showing that the pleader is entitled to relief."

(3)    <u>Discussion</u>

Classic argues that Count Two merely recites the statutory language of Bankruptcy Code §548(a).[11] The Plaintiff responds that the fraudulent transfer claim must be preserved as an alternative claim and should not be dismissed.

In *Mervyn's*, the Court determined that the complaint satisfied the pleading standards of both Rules 8(a) and 9(b), finding:

> Debtor specified facts to describe the 2004 Sale, the property and dates involved in the transaction, the value of the transfers made, the amount of money transferred to [the defendant], the source of the funds and the negative implications of the 2004 Sale.

*Mervyn's*, 2010 WL 980274 at *6. Here, Count Two of the Complaint merely recites the statutory language of § 548(a) of the Bankruptcy Code and completely lacks any factual allegations to support a fraudulent transfer claim. Count Two fails to meet the pleading requirements set forth in *Twombly* and *Fowler*, above, and should be dismissed pursuant to Rule 12(b)(6).

When a complaint fails to state a claim, the court must give a plaintiff an opportunity to amend the complaint, unless amendment would be futile. *Phillips v. County of Allegheny*, 515

---

[11]Bankruptcy Code §548(a)(1)(B)(2003) provided:

The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily - -

. . . .

(B)(i)    received less than a reasonably equivalent value in exchange for such transfer or obligation; and

   (ii)    (I)    was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

       (II)    was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

      (III)    intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

16

F.3d 224, 228 (3d Cir. 2008).  Leave to amend is proper unless "there is undue delay, bad faith, a dilatory motive, prejudice or futility." *See Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.)*, 327 B.R. 711, 718  (Bankr.D.Del. 2005) quoting *Valley Media, Inc. V. Borders, Inc. (In re Valley Media, Inc.)*, 288 B.R. 189, 193 (Bankr. D. Del. 2003).

There is no evidence that the Plaintiff's bare-boned drafting of Count Two was motivated by bad faith or an intent to delay.[12]  At issue, however, is whether granting leave to amend in this case would be futile.  The parties, here, have submitted affidavits and other materials in support of their opposing positions on the Motion.  Rule 12(d) provides:

> If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed.R.Civ.P. 12(d).  The submissions made by the parties show that the Transfers resulted from an arms-length business relationship between the parties.  (*See* Turgeon Amended Aff., ¶4 ("Each of the invoices paid on in the last 90 days was for goods that were delivered and received by Pillowtex.").)  However, the parties never discussed treating the motion to dismiss Count Two as a motion for summary judgment.  To ensure that the Trustee has been afforded an adequate opportunity to respond, Count Two will be dismissed with leave to the Trustee to file, within fourteen (14) days, an amendment to Count Two of the Complaint, setting forth adequate facts to support a fraudulent transfer claim.

---

[12]Indeed, the original complaint was filed before the Supreme Court's *Twombly* decision.

17

**CONCLUSION**

The evidence the parties have provided is inconsistent and establishes that material facts are in dispute regarding the ordinary course of business defense. The Court will, therefore, deny Classic's motion for summary judgment on Counts One and Three of the Complaint. Classic's motion for dismissal of Count Two of the Complaint will be granted, with leave to the Trustee to file, within fourteen (14) days, an amendment to Count Two setting forth adequate facts to support a fraudulent transfer claim.

An appropriate Order follows.

BY THE COURT:

KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: April 14, 2010